SADIE HICKS ET AL. v. TEXAS LOAN & INVESTMENT COMPANY.

Decided June 13, 1908.

Homestead—Mechanic's Lien—Change in Plans—Evidence.

In a suit by the transferee of a mechanic's contract for improvements on a homestead, evidence considered, and held to support a judgment foreclosing the mechanic's lien. The fact that the original contract contemplated a five-room addition to a three-room house, and that afterwards the plans were so changed as to make an eleven-room house, did not nullify the original contract, it appearing that no fraud was practiced upon the wife, that the changes were made with her knowledge and consent, that the additional cost was paid with money obtained from another source and did not increase the incumbrance and that the money borrowed and secured by lien had all been used in the improvement of the homestead. Paschall v. Pioneer Savings Co., 19 Texas Civ. App., 102, distinguished.

Appeal from the District Court of Galveston County. Tried below before Hon. Lewis Fisher.

*Stanley Thompson,* for appellant.—In order to justify a conclusion of law by a court, that a valid and subsisting lien exists against a homestead for the erection of improvements thereon, the evidence must show: First, a contract for said improvements, specifying the kind and character thereof and the cost thereof, signed and acknowledged by the husband and wife and recorded. Second, that the contract so signed, acknowledged and recorded, and the requirements thereof, were performed. The fact that another and different contract for improvements was performed, or that certain other improvements were made upon the premises, into which the money lent was used, does not give a valid lien, no contract therefor, granting a lien, ever having been signed or acknowledged. Paschall v. Pioneer Savings Co., 19 Texas Civ. App., 102; Rhodes v. Jones, 26 Texas Civ. App., 569; Taylor v. Huck, 65 Texas, 238; Lyon & Gribble v. Ozee, 66 Texas, 95; Walker v. Woody, 40 Texas Civ. App., 346.

In order to estop a married woman the testimony must show that she was guilty of some positive act of fraud, and in this case the evidence shows no act of fraud on the part of Sadie Hicks, nor does it show that Wm. Hicks was guilty of any fraudulent acts, but does show that he informed the agent of appellee of the change, and J. E. Pope, the

agent of appellee O. K.'d the notes, and it was upon this O. K. that the drafts were drawn and accepted and paid by the appellee. San Antonio R. E. B. & L. Assn. v. Stewart, 27 Texas Civ. App., 299; Etheridge v. Price, 73 Texas, 597; Johnson v. Bryan, 62 Texas, 626; McLaran v. Jones, 89 Texas, 131.

In order to establish and fix a mechanic's and builder's lien upon the homestead of a family in the State of Texas, there must be a substantial performance of the terms of the contract, and the improvements specified in the contract must be built as provided for in the contract. Paschal v. Pioneer Savings Co., 19 Texas Civ. App., 102; Rhodes v. Jones, 26 Texas Civ. App., 569; Taylor v. Huck, 65 Texas, 238; Lyon & Gribble v. Ozee, 66 Texas, 95; Walker v. Woody, 40 Texas Civ. App., 346.

*Mott & Armstrong,* for appellee.—In support of the judgment, cited: Pioneer Building & Loan Association v. Everheart, 18 Texas Civ. App., 192; Walters v. Texas Building & Loan Association, 8 Texas Civ. App., 504; First National Bank v. Campbell, 46 S. W., 846; Pioneer Savings and Loan Company v. Edwards, 12 Texas Civ. App., 556; Banks v. House, 50 S. W., 1023; Lippencott v. York, 86 Texas, 276.

PLEASANTS, CHIEF JUSTICE.—This is a suit brought by appellee against appellant, Sadie Hicks, and her husband, William Hicks, to recover upon three promissory notes for $400 each executed by said defendants in favor of William Smith and transferred and assigned to appellee by said Smith, and to foreclose a mechanic's lien upon lots 5 and 6 in block 12 in Cascara Addition to the city of Houston, given by said defendants to secure the payment of said notes.

The defendants answered by general demurrer and general denial, and further pleaded that the property upon which the lien was sought to be enforced was their homestead at the time said lien was created, and that Smith had failed to carry out the contract in consideration of which said notes and lien were given, and had failed to construct the improvements required by said contract or any improvements of any kind upon said premises, and therefore the consideration for said notes had wholly failed and said lien was unenforceable and void.

Before the trial in the court below William Hicks died and his minor children were made parties.

The trial in the court below without a jury resulted in a judgment in favor of plaintiff for the sum of $1,200, principal of said notes with interest thereon from the date of the notes, and for foreclosure of the mechanic's lien upon the property described in the petition. The trial judge filed the following conclusions of fact which, with the modification hereinafter indicated, we adopt as our findings of fact.

"By an instrument dated August 31, 1903, duly executed and acknowledged by Wm. M. Hicks and Sadie Hicks, his wife, upon the one part, and Wm. Smith upon the other part, the said Smith agreed to furnish work and materials to be used in constructing improvements upon the property described in the pleadings, which, at the time, was the homestead of Hicks and wife, and Hicks and wife, in pursuance of the contract, at the time of its execution made and delivered to Smith their

three promissory notes, each for the sum of $400, of date August 31, 1903, by which they promised to pay to Smith, or order, the several sums called for by said notes, with interest thereon from date at the rate of ten percent per annum, the notes reciting that the first note was to be paid when the frame of the house was up, and the second note when the roof was on and the floors laid, and the third note when the improvements were completed.

"It was contemplated by all the parties to the contract of August 31, 1903, that said Smith would transfer to the plaintiff the indebtedness evidenced by the notes, together with the lien securing the same, and that the plaintiff for the accommodation of Hicks and wife would extend the time of payment of the indebtedness. This contract was later, on the third day of October, 1903, filed for record by the plaintiff in the office of the county clerk of Harris County. After the execution of the contract of August 31, 1903, Smith, by written instrument, which is attached to and which is under the same cover as the main contract, transferred to the plaintiff the indebtedness evidenced by the notes and all rights of lien securing the indebtedness. On the 1st day of October, 1903, and 10th day of October, 1903, and the 20th day of November, 1903, Wm. Smith, the contractor, in Houston, drew three drafts upon the plaintiff, each for the sum of $400, payable to the Texas & Louisiana Lumber Company, a company engaged in furnishing building materials, and at the time of drawing the several drafts delivered them to W. M. Hicks for the purpose of being delivered to the Lumber Company for transmission to Galveston, for collection from the plaintiff.

The drafts were promptly forwarded by the Lumber Company to the plaintiff by whom they were promptly paid. The money collected upon the drafts was in part used for the payment of materials furnished by the Lumber Company that went into the construction of improvements upon the lots described in the pleadings, and the balance of the money was delivered by the Lumber Company to Hicks, or upon his orders, and was used in paying for labor in erecting the improvements upon said property. The drafts which were drawn by Smith upon the plaintiff, and which were paid by the plaintiff, were drawn under and in pursuance of the contract and arrangement of August 31, 1903, Smith had no right to procure any money from the plaintiff except under and in pursuance of the contract and arrangement of August 31, 1903. To the first draft drawn by Smith on plaintiff was attached note number one made by Hicks and wife, dated August 31, 1903, for $400, and to the second draft was attached the second note for $400 made by Hicks and wife, and to the third draft was attached the third note for $400, made by Hicks and wife, these notes having been executed and delivered to Smith contemporaneously with the contract of August 31, 1903. The notes which were attached to the drafts and presented to the plaintiff for payment at Galveston, bore the endorsement of the said Smith, making them payable to the plaintiff company. The notes at the time of the drawing of the drafts in Houston were delivered by Smith to Wm. M. Hicks for the purpose of being attached to the drafts, and to the end that the money evidenced by the drafts should be collected from the plaintiff. I find that the parties to the contract of August 31, 1903, did not abandon it, but that, in fact, Smith, the con-

tractor, procured from the plaintiff company the sum of $1,200, which was used for work and materials in constructing improvements on the said property, and that but for the contract of August 31, 1903, Smith could not have procured any money upon his drafts or otherwise from the plaintiff company. The improvements were completed about the time of the payment of the last draft. Hicks, in making application to the plaintiff company with a view of arranging for the procuring of money for the erection of improvements upon said property, stated that the improvements contemplated would consist of a five room addition to a three room house already upon the property. After or about the time that work upon the improvements was begun, Hicks came into the possession of money which he had not theretofore had, and thereupon enlarged his ideas of building a residence and used the money which he had just recently acquired, or a part thereof, together with the money which was above acquired from the plaintiff upon the drafts drawn by Smith, in constructing the house, which upon completion contained eleven rooms. Smith worked upon the improvements throughout their construction, but testified that he was working by the day. The plaintiff company had no knowledge or notice that there had been any change of ideas or plans by Hicks, and supposed up to the filing by the defendants of their pleadings in this suit that the improvements had been built in every respect upon the plans and requirements outlined in the contract of August 31, 1903. The improvements as erected consisted of a dwelling house well adapted to the needs of a family. No liens of any character, except the lien of the contract of August 31, 1903, were contracted for, or created upon the improvements that were erected. The enlarged plan of the house was followed out solely by the dictation of Hicks, and this enlarged plan was fully known to Mrs. Hicks at the time it was conceived, and at the time it was carried into execution. No notification was at any time given by anyone to the plaintiff company that there had been any so-called abandonment of the contract of August 31, 1903, or that a larger house would be erected than originally contemplated. Mrs. Hicks made no objection to the plaintiff company or to Smith or to any one else about the building of the larger house. Mrs. Hicks, according to her testimony, differed in her ideas as to a larger house being desirable, as Mr. Hicks thought was desirable. Any difference of views that she may have entertained from Mr. Hicks was confined to conversation between them, and in this matter, if she differed in judgment, she yielded her judgment to the judgment of her husband. There was no thought or intention at any time on the part of either Mr. or Mrs. Hicks or Wm. Smith of not having the Loan Company furnish the $1,200 for the construction of improvements upon said property; on the contrary, the money was procured from the plaintiff company under and in pursuance and in contemplation of the contract of August 31, 1903, and upon no other basis.

"I find that there was no abandonment of the contract of August 31, 1903, but that under this contract the sum of $1,200 was furnished by Smith and was procured from the plaintiff company and was used for the payment for work and materials in constructing improvements upon said property. Two payments of interest, one of $9 and the other of $10 were paid on account of the indebtedness evidenced by the notes, but

no other payments; with these exceptions the entire indebtedness remains unpaid. After the improvements were completed plaintiff company offered to extend the time of payment of the indebtedness, and had presented by a notary public to Hicks and wife a draft of a new note and deed of trust extending time of payment of the indebtedness. These papers Hicks and wife declined to sign, and have declined to pay anything upon the indebtedness."

By their first assignment of error appellants complain of the finding of fact by the trial court that the original contract, under which appellee claims a lien upon the property involved in this suit, was not abandoned by the parties thereto.

We think this finding is sustained by the evidence. It is true that Mrs. Hicks testified that the house mentioned in the contract was never built and that the contractor, William Smith, never built any other house for herself and husband, and that she never signed any contract for the eleven room house that was built on the premises. William Hicks' depositions were in evidence and he stated therein that no improvements were placed on the property under the original contract. Smith also testified that he did not build the five room house mentioned in the contract, nor any other house for Hicks and wife. Notwithstanding these general statements by these witnesses the undisputed evidence shows that a house of eleven rooms was built upon the premises and that the $1,200 which Hicks and wife had borrowed from appellee for the purpose of making improvements upon said premises, was all used to pay for material and labor that went into the construction of said house. The evidence further shows that Mrs. Hicks knew that the change in the original plan from a five to an eleven room house had been made, and that the money she and her husband had contracted to borrow from the appellee was being advanced by appellee and used in the construction of the eleven room house. Smith may not, as contractor, have built the eleven room house, but the undisputed evidence shows that he assisted in its construction and drew all of the drafts upon which the money borrowed from appellee was paid.

Under these facts it can not be said that there was an abandonment of the contract.

There was a change in the original understanding as to the size of the house that would be built, but we do not think this change can be held to have abrogated the contract.

The contract contains the following provisions: "It is contemplated that the Texas Loan & Investment Company of Galveston, Texas, will purchase the indebtedness hereinbefore mentioned, and all and every right and lien securing the same, and it is expressly understood, stipulated and agreed between the parties to this instrument, and the said Texas Loan & Investment Company, that upon the purchase by said company of said indebtedness, and of each and every part thereof that it shall purchase, it shall have a lien for each and every such purchase, and shall be subrogated to all and every right of the said party of the second part, and such indebtedness so purchased, and each and every lien securing the same, shall be in no wise dependent upon the full and final completion and execution of this contract; but the indebted-

ness, and each and every part thereof so purchased shall be absolutely secured by lien to the extent of such purchase."

This shows that the transaction was in effect a loan by the appellee to Hicks and wife for the purpose of improving their homestead. The money so loaned was used by said Hicks and wife for the purposes for which it was borrowed. The fact that at the time they made this loan they contemplated having a five room house built and that thereafter they concluded to build a larger house, does not affect the validity of the lien given for the security of said loan.

There was no diversion of the money loaned to any use other than that for which it was borrowed and for which the lien given by Hicks and wife upon their homestead was authorized under the Constitution, and the change in the size of the house was not in fraud of any right of the wife, the undisputed evidence showing that all of the additional costs of the improvements were paid by the husband and that there is no lien upon the property except that in favor of appellee.

The case of Paschall v. Pioneer Savings Co., 19 Texas Civ. App., 102, relied on by the appellants, presents an entirely different question from that presented here. In that case the plaintiff Loan Company had contracted with Paschall and wife to construct for them a dwelling house in accordance with plans and specifications which were made a part of the contract, and in consideration therefor said defendants agreed to pay the sum of $1,500 to be secured by a lien upon the premises. The defendants contended, and the court found from the facts in that case, that a part of the money which was to have been used in the construction of the house was diverted to other purposes, that the house actually constructed was very inferior to the one contracted for, and there had been no substantial compliance by the plaintiff with the terms of the contract. Upon these facts the court held that the plaintiff in that case had acquired no lien upon the defendants' homestead.

From the finding of facts before set out it is seen that none of the facts upon which the opinion in the case cited is based are present in this case.

The record shows that J. E. Pope, who was a local agent of appellee at Houston and whose duty it was to see that the work on the improvements erected on the defendants' premises had reached the stage which authorized the payment of the several notes in accordance with their terms, and who did perform this duty and marked each of the drafts drawn on appellee "O. K.," knew that the change in the size of the building had been made. We think this was notice to appellee of said change, and we so find. We do not think, however, that this fact is at all material.

Upon the facts found we think the trial court correctly held that appellee had a lien upon the premises to secure the notes sued on, and the judgment foreclosing such lien is affirmed.

*Affirmed.*

Writ of error refused.